Robert Ahdoot, SBN 172098
*rahdoot@ahdootwolfson.com*
Tina Wolfson, SBN 174806
*twolfson@ahdootwolfson.com*
Theodore W. Maya, SBN 223242
*tmaya@ahdootwolfson.com*
Bradley K. King, SBN 274399
*bking@ahdootwolfson.com*
AHDOOT & WOLFSON, PC
10728 Lindbrook Drive
Los Angeles, California 90024
Telephone: (310) 474-9111
Facsimile: (310) 474-8585

Attorneys for Plaintiff,
SARA HAWES

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SARA HAWES, individually and on behalf of all others similarly situated,<br><br>　　　　　　　Plaintiff,<br><br>　v.<br><br>APPLE INC., a California corporation,<br><br>　　　　　　　Defendant. | Case No. 5:18-cv-1339<br><br>**CLASS ACTION COMPLAINT AND COMPLAINT FOR DAMAGES**<br>**(Demand for Jury Trial)** |

Plaintiff Sara Hawes ("Plaintiff"), acting individually and on behalf of all others similarly situated, brings this action for damages and equitable relief against Defendant Apple Inc. ("Apple"):

**NATURE OF THE CASE**

1. This is a class action brought against Apple on behalf of all consumers who had their older iPhone models "throttled," or the phones' performance secretly stifled, by Apple to compel the consumers to upgrade to the latest model iPhone.

2. Apple releases new iPhone models annually and typically updates the phones' operating software, or iOS, around the same of the new iPhone releases. Once it is available, Apple pushes the new iOS software for download and installation on the new and older model iPhones.

3. Apple's decision to impose performance requirements for new iOS software that exceed the hardware capabilities of older model iPhones (namely, the iPhone 6, 6 Plus, 6s, 6s Plus, 7, 7 Plus, and SE) and caused the older phones to experience sudden shutdowns. These problems became most significant after the rollout of iOS 10 in the fall of 2016. Rather than restoring the older model iPhones to previous performance capability after the iOS 10 problems arose, Apple released a series of update patches to iOS 10 in 2017 that throttled the older iPhones' performance by up to 60% to avoid unexpected shutdowns.

4. Apple's throttling practices concealed to owners of older model iPhones that it was Apple's conduct to blame for their phones' performance issues, instead leading consumers to believe the older phones were simply nearing the end of their useful lives. Consequently, many owners of older iPhones upgraded to newer models.

5. After Apple's throttling practices were exposed, Apple admitted to the conduct and deceptively represented to consumers that these performance restrictions were actually a "feature" for older models to prevent unexpected shutdowns. In addition, Apple is offering discounted battery replacements on the older models to compensate for the performance issues. In addition to wrongfully reaping more profits on battery sales, replacing the battery on the older models is a temporary solution that does not rectify the fact that the older phones' hardware is incompatible with the iOS updates.

6. Plaintiff brings thus action pursuant to Fed. R. Civ. P. ("Rule") 23 for damages and other relief arising from Apple's throttling practices and misrepresentations.

## PARTIES

7. Plaintiff Sara Hawes is a citizen and resident of California and had an iPhone 6 that was throttled by Apple. In or around October of 2016, Plaintiff upgraded to the iPhone 7 Plus, which also has been throttled by Apple.

8. Defendant Apple Inc. is an American technology company that designs, develops, and sells electronics, computer software, and online services to consumers, including Plaintiff and Class members, which include sales of iPhones and interrelated software services. Apple's principal place of business is located at 1 Infinite Loop, Cupertino, California 95014. Apple conducts business and operates retail locations throughout the State of California and the United States.

9. Based on information and belief, Apple's decisions relating to developing, marketing, and implementing the actions complained of herein originated from Apple, Inc. in Cupertino, California, and all plans and decisions that originated at Apple business locations outside of Cupertino required approval from Apple's Cupertino headquarters, thereby providing Apple authority and control over the actions complained about herein.

## JURISDICTION AND VENUE

10. This Court has jurisdiction over this action under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d). There are at least 100 members in the proposed class, the aggregated claims of the individual Class Members exceed the sum or value of $5,000,000.00 exclusive of interest and costs, and Members of the Proposed Class are citizens of states different from Apple.

11. This Court may exercise jurisdiction over Apple because Apple's principal place of business is located within this District and Apple operates retail locations within this District. Thus, Apple has established sufficient contacts in this District such that personal jurisdiction is appropriate.

12. Venue is proper in this District under 28 U.S.C. § 1391(a) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District. Specifically, Apple's throttling practices complained about herein were developed and implemented from Apple's Cupetrino, California headquarters within this District.

13. Assignment is proper to the San Jose division of this District under Local Rule 3-2(c)-(e), as a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in Santa Clara County, where Apple is headquartered.

## FACTUAL ALLEGATIONS

14. In addition to designing and selling iPhones, Apple designs accompanying iOS operating software for its iPhones. When a new iOS is available for download, Apple will send push notifications to all iPhone users, including owners of older model iPhones, to download and install the software update.

15. Apple's software updates are the only option for iPhone owners to maintain the latest security updates for their devices, and from a functional standpoint use of the latest iOS essentially is mandatory to, *inter alia*, maintain active use of the App Store and current versions of applications (many of which will not function unless the latest version is downloaded).

16. Apple released iOS 10 in September 2016, followed by several patch updates to address issues with the new software update. As early as October 2016, iPhone owners began noticing sudden shutdowns that would occur when battery life was well above normal shutdown range, often still having over 30% power remaining. These shutdown issues were not rectified by further patch updates through early 2017, when iOS 10.2.1 implemented Apple's throttling practice. *See generally* Gordon Kelly, *Apple iOS 10.2.1 Has A Nasty Surprise*, FORBES, Jan. 24, 2017, *available at* https://www.forbes.com/sites/gordonkelly/2017/01/24/apple-ios-10-2-1-serious-security-problem-fixed/#5f27ceca134b (last visited Jan. 11, 2018).

17. In November 2016, Apple admitted that there was a problem which led the phones to "unexpectedly shut down," but claimed the problem affected only a "very small number of iPhone 6s devices" and suggested an issue with the phones' batteries was the root cause of the problem. Apple offered iPhone 6s purchasers a free replacement battery within "the first three years after the first retail sale of the unit."

18. Despite its acknowledgment that any iPhone should have a usable life of at least three years, Apple soon discovered that the shutdowns were not solely a battery degradation issue, but actually a lack of compatibility of the older iPhones' hardware with the newer iOS updates' software. The

shutdown problem was even affected iPhone 7 models, which were brand new in the late 2016 and early 2017 timeframe.  Apple failed to extend its free battery replacement offer to those owners.

19. On or around December 18, 2017, Primate Labs, an independent tech developer, released data charts on its Geekbench website showing how older iPhones were performing slower than when they were launched.  *See generally* John Poole, *iPhone Performance and Battery Age*, GEEKBENCH, Dec. 18, 2017, *available at* https://www.geekbench.com/blog/2017/12/iphone-performance-and-battery-age/ (last visited Jan. 11, 2018).

20. Apple subsequently admitted to the throttling practices, confirming that it has been throttling the performance of older iPhone models since at least 2017.  Apple confirmed that its iOS operating system deliberately slows the processor speeds of iPhones as they get older and the batteries deteriorate.

21. Despite the admission, Apple continued to deceive consumers by attempting to explain away its throttling practices as an altruistic "feature" that prevents the older iPhone models from "unexpectedly shutting down."  *See* Tom Warren and Nick Statt, *Apple confirms iPhones with older batteries will take hits in performance*, THE VERGE, Dec. 20, 2017, *available at* https://www.theverge.com/2017/12/20/16800058/apple-iphone-slow-fix-battery-life-capacity  (last visited Dec. 22, 2017).

22. Further, Apple's throttling technology actually reduces battery life, which then prompts owners to more frequently and continually charge their older iPhones to further erode battery life.

23. Apple's shut-down prevention representation is misleading and fraudulent, as its actual intent and purposes behind Apple's throttling practices is to induce consumers with older iPhone models to upgrade to the latest version iPhone.  Apple has been engaging in this deceptive throttling practice for at least three generations of iPhone models to increase iPhone sales and reap more profits.

## CLASS ACTION ALLEGATIONS

24. Plaintiff brings this lawsuit individually and as a class action on behalf all others similarly situated pursuant to Federal Rules of Civil Procedure ("Rule") 23(a), (b)(2), and/or (b)(3).  This action satisfies the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of Rule 23.

25. The Nationwide Class and Sub-Class are defined as:

Nationwide Class:
All purchasers or lessees of an iPhone SE, 6, 6 Plus, 6s, 6s Plus, 7, or 7 Plus prior to December 20, 2017.

Nationwide Sub-Class:
All purchasers or lessees of an iPhone SE, 6, 6 Plus, 6s, 6s Plus, 7, or 7 Plus who purchased or leased a newer model iPhone prior to December 20, 2017.

(collectively, the "Nationwide Classes").

26. The alternative California Class and Sub-Class are defined as:

California Class:
All purchasers or lessees in California of an iPhone SE, 6, 6 Plus, 6s, 6s Plus, 7, or 7 Plus prior to December 20, 2017.

California Sub-Class:
All purchasers or lessees in California of an iPhone SE, 6, 6 Plus, 6s, 6s Plus, 7, or 7 Plus who purchased or leased a newer model iPhone prior to December 20, 2017.

(collectively, the "California Classes," and collectively with the Nationwide Classes, the "Classes").

27. Excluded from the Classes are: (1) Apple, any entity or division in which Apple has a controlling interest, and its legal representatives, officers, directors, assigns, and successors; (2) the Judge to whom this case is assigned and the Judge's staff; and (3) those persons who have suffered personal injuries as a result of the facts alleged herein. Plaintiff reserves the right to amend the Class definitions if discovery and further investigation reveal that the Classes should be expanded or otherwise modified.

28. Numerosity: Although the exact number of Class Members is uncertain and can only be ascertained through appropriate discovery, the number is great enough such that joinder is impracticable. The disposition of the claims of these Class Members in a single action will provide substantial benefits to all parties and to the Court. The Class Members are readily identifiable from information and records in Apple's possession, custody, or control.

29. Typicality: The claims of the representative Plaintiff are typical in that Plaintiff, like all Class Members, is or was an owner of an older iPhone model that was throttled by Apple. Plaintiff, like all Class Members, has been damaged by Apple's misconduct in that, *inter alia*, he has improperly had

his iPhone throttled. Furthermore, the factual bases of Apple's misconduct are common to all Class Members and represent a common thread of fraudulent, deliberate, and negligent misconduct resulting in injury to all Class Members.

30. <u>Commonality</u>: There are numerous questions of law and fact common to Plaintiff and Class Members that predominate over any individual questions. These common legal and factual issues include the following:

    a. Whether Apple deliberately throttled performance of older iPhone models;

    b. Whether, through its throttling practices, Apple intended to induce its customers to upgrade to newer iPhone models;

    c. Whether Apple's statement that its throttling practices are a shut-down prevention "feature" is misleading and deceptive; and

    d. Whether Plaintiff and other Class Members have sustained damages as a result of Apple's wrongful business practices described herein, and the proper measure of damages.

31. <u>Adequate Representation</u>: Plaintiff will fairly and adequately protect the interests of Class Members. Plaintiff has retained attorneys experienced in the prosecution of class actions, including consumer and product defect class actions, and Plaintiff intends to prosecute this action vigorously.

32. <u>Predominance and Superiority</u>: Plaintiff and Class Members have all suffered and will continue to suffer harm and damages as a result of Apple's unlawful and wrongful conduct. A class action is superior to other available methods for the fair and efficient adjudication of the controversy. Absent a class action, Class Members would likely find the cost of litigating their claims prohibitively high and would therefore have no effective remedy at law. Because of the relatively small size of Class Members' individual claims, it is likely that few Class Members could afford to seek legal redress for Apple's misconduct. Absent a class action, Class Members will continue to incur damages, and Apple's misconduct will continue without remedy. Class treatment of common questions of law and fact would also be a superior method to multiple individual actions or piecemeal litigation in that class treatment will conserve the resources of the courts and the litigants and will promote consistency and efficiency of adjudication.

**FIRST CAUSE OF ACTION**
**Violation of the California Consumers Legal Remedies Act**
**Cal. Civ. Code § 1750, *et seq*.**
**(On behalf of the Nationwide Classes or, in the Alternative, the California Classes)**

33. Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

34. Plaintiff brings this cause of action individually and on behalf of the National Classes or, in the alternative, the California Classes against Apple.

35. Apple is a "person" as defined by Cal. Civ. Code § 1761(c).

36. Plaintiff and Class Members are "consumers" within the meaning of Cal. Civ. Code § 1761(d).

37. Plaintiff's and Class Members' iPhones constitute "goods" as defined by Cal. Civ. Code § 1761(a).

38. Plaintiff's and Class Members' purchases of iPhones constitute "transactions," as defined by Cal. Civ. Code § 1761(e).

39. Plaintiff's and Class Members' use of their iPhones were for personal, family, and household purposes as meant by Cal. Civ. Code § 1761(d).

40. Venue is proper under Cal. Civ. Code § 1780(d) because a substantial portion of the transactions at issue occurred in this District. (*See* Declaration of Robert Ahdoot, attached hereto.)

41. Apple deceived consumers in that it deceptively throttled the performance of older iPhone models to induce consumers to purchase new iPhones. Further, Apple misrepresented the purpose of its throttling practices once they were revealed to the public, indicating that the throttled performance was a "feature," not a deceptive ploy to induce iPhone upgrades and more sales.

42. Apple's active concealment, failure to disclose, and subsequent misrepresentations violated the California Consumers Legal Remedies Act ("CLRA") in the following manner:

    a. In violation of Section 1770(a)(5), Apple misrepresented that its older iPhone models had characteristics, benefits, or uses that they did not have (by first deceptively throttling the iPhones and then misrepresenting the throttling as an altruistic "feature");

  b. In violation of Section 1770(a)(7), Apple misrepresented that its older iPhone models were of a particular standard, quality, and/or grade when they were of another (by first deceptively throttling the iPhones and then misrepresenting the throttling as an altruistic "feature");

  c. In violation of Section 1770(a)(9), Apple advertised its older iPhone models with an intent not to sell them as advertised (by first deceptively throttling the iPhones and then misrepresenting the throttling as an altruistic "feature");

  d. In violation of Section 1770(a)(14), Apple misrepresented that its older iPhone models conferred or involved rights, remedies, or obligations that they did not have (by first deceptively throttling the iPhones and then misrepresenting the throttling as an altruistic "feature"); and

  e. In violation of Section 1770(a)(16), Apple misrepresented that its older iPhone models were supplied in accordance with previous representations when they were not (by first deceptively throttling the iPhones and then misrepresenting the throttling as an altruistic "feature").

43. Apple's misrepresentations and nondisclosures regarding its iPhone throttling practices were undisclosed from at least 2016 to December 2017, and were material to Plaintiff and Class Members because a reasonable person would have considered these practices important in deciding whether or not to purchase an older iPhone model and/or upgrade to a new iPhone.

44. Plaintiff and Class Members relied upon Apple's material nondisclosures and misrepresentations, and had Plaintiff and Class Members known the truth about its throttling practices, they would not have purchased their iPhones and/or been induced to upgrade to newer models.

45. As a direct and proximate result of Apples's material nondisclosures and misrepresentations, Plaintiff and Class Members have been irreparably harmed.

46. On behalf of the Class, Plaintiff seeks injunctive relief in the form of an order enjoining Apple from making such material misrepresentations and failing to disclose or actively concealing its aforementioned practices.  Plaintiff also seeks attorneys' fees and costs.

47. In accordance with Cal. Civ. Code § 1782(a), on March 1, 2018, Plaintiff's counsel served Apple with notice of the CLRA violations by certified mail, return receipt requested.

48. If Apple fails to provide appropriate relief for its CLRA violations within 30 days of receipt of Plaintiff's notification letter, Plaintiff will amend this Complaint to also seek compensatory and exemplary damages as permitted by Cal. Civ. Code §§ 1780 and 1782(b).

**SECOND CAUSE OF ACTION**
**Violations of the California Unfair Competition Law**
**Cal. Bus. & Prof. Code § 17200, *et seq.***
**(On behalf of the Nationwide Classes or, in the Alternative, the California Classes)**

49. Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

50. Plaintiff brings this cause of action individually and on behalf of the National Classes or, in the alternative, the California Classes against Apple.

51. California Business & Professions Code § 17200, *et seq.* ("UCL") prohibits acts of "unfair competition," including any "unlawful, unfair or fraudulent business act or practice" and "unfair, deceptive, untrue or misleading advertising."

52. Apple deliberately throttled the performance of older iPhone models to induce consumers to purchase newer models.

53. In failing to disclose its iPhone throttling practices, Apple knowingly, intentionally, and/or negligently concealed material facts and breached its duty not to do so.

54. Apple was under a duty to Plaintiff and Class Members to disclose its throttling practices because:

   a) Apple was in a superior position to know the true state of facts about how its throttling practices affected older iPhone models;

   b) Apple actively concealed its throttling practices from Plaintiff and Class Members; and

   c) Apple made affirmative representations about how its throttling practices were an altruistic "feature" for older iPhones when in fact they were designed to induce upgrades to newer models.

55. The facts concealed by Apple to Plaintiff and Class Members are material in that reasonable persons would have considered them to be important in deciding whether to purchase an

iPhone. Had Plaintiff and Class Members known about Apple's throttling practices, they would not have purchased their iPhones and/or upgraded to newer iPhones.

56. Apple concealed the upgrade-inducing purpose behind its throttling practices even after the practices were independently exposed to consumers. Apple continues to cover up and conceal the true purpose behind these practices.

57. Apple has violated and continues to violate the UCL's prohibition against engaging in "unlawful" business acts or practices, by, among other things, violating the CLRA.

58. Apple's acts, omissions, and conduct also violate the unfair prong of the UCL because Apple's acts, omissions, and conduct, as alleged herein, offended public policy and constitutes immoral, unethical, oppressive, and unscrupulous activities that caused substantial injury, including to Plaintiff and Class Members. The gravity of Apple's conduct outweighs any potential benefits attributable to such conduct and there were reasonably available alternatives to further Apple's legitimate business interests, other than Apple's conduct described herein.

59. By failing to disclose and actively concealing its throttling practices, Apple engaged in a fraudulent business practice that is likely to deceive a reasonable consumer.

60. As a direct and proximate result of Apple's unfair and deceptive practices, Plaintiff and Class Members have suffered and will continue to suffer actual damages.

61. Apple has been unjustly enriched and should be required to make restitution to Plaintiff and the Class pursuant to Sections 17203 and 17204 of the UCL.

**THIRD CAUSE OF ACTION**
**Trespass to Chattels**
**(On behalf of the Nationwide Classes or, in the Alternative, the California Classes)**

62. Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

63. Plaintiff brings this cause of action individually and on behalf of the National Classes or, in the alternative, the California Classes against Apple.

64. Plaintiff's and Class Members' iPhones were their personal property.

65. Apple interfered with their personal property by pushing software updates that substantially impeded their iPhones' performance and utility.

66. Apple pushed these software updates with the knowledge that the older model iPhones' hardware was incompatible with newer iOS software updates, that it was throttling those older phones' performance, and that it was prematurely degrading the battery life of the older phones.

67. Apple failed to disclose these negative ramifications of updating to the latest iOS software to Plaintiff and Class Members, instead functionally forcing them to upgrade to ensure security vulnerabilities on the devices were fixed and applications would function.

68. As a direct and proximate result of Apple's interference with their iPhones, Plaintiff and Class Members suffered damages, including permanent degradation of their iPhones' performance and utility, and/or being induced to purchase new iPhones and/or new batteries from Apple.

**FOURTH CAUSE OF ACTION**
**Breach of the Covenant of Good Faith and Fair Dealing**
**(On behalf of the Nationwide Classes or, in the Alternative, the California Classes)**

69. Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

70. Plaintiff brings this cause of action individually and on behalf of the National Classes or, in the alternative, the California Classes against Apple.

71. Plaintiff and Class Members entered into contracts with Apple in connection with their use of their iPhones and Apple's accompanying iOS software.

72. Plaintiff and Class Members gave fair and reasonable consideration and performed all their material obligations under the contracts.

73. Implied in all contracts is a covenant of good faith and fair dealing, imposing a duty on the parties to act in good faith and deal fairly with one another.

74. Apple's contracts with Plaintiff and Class Members gave Apple discretion to make available future iOS software updates.

75. Plaintiff and Class Members had a reasonable expectation that, when Apple used its discretion to create and push iOS software updates to their iPhones, the updates would benefit the iPhones' functionality, not worsen the phones' functionality.

76. Apple used its discretion to push iOS updates to Plaintiff's and Class Members' iPhones that were incompatible with the phones' hardware, throttled the phones' performance, degraded the phones' battery life, and negatively impacted the phones' functionality.

77. Plaintiff and Class Members had no reason to know Apple was utilizing its contractual discretion to negatively affect their iPhones.

78. By pushing its iOS updates as described above, Apple breached the covenant of good faith and fair dealing and breached its contractual duty to Plaintiff and Class Members.

79. As a direct and proximate result of Apple's breach, Plaintiff and Class Members suffered damages, including permanent degradation of their iPhones' performance and utility, and/or being induced to purchase new iPhones and/or new batteries from Apple.

## RELIEF REQUESTED

Plaintiff, individually and on behalf of all others similarly situated, requests the Court enter judgment against Apple, and accordingly requests the following:

A. An order certifying the proposed Classes and designating Plaintiff as the named representative of the Classes and designating the undersigned as Class Counsel;

B. A declaration that Apple is financially responsible for notifying all Class Members about their deceptive iPhone throttling practices;

C. An order enjoining Apple from further deceptive throttling practices;

D. An award to Plaintiff and Class Members of compensatory, actual, exemplary, and statutory damages, including interest, in an amount to be proven at trial;

E. A declaration that Apple must disgorge, for the benefit of Plaintiff and Class Members, all or part of the ill-gotten profits it received from its deceptive throttling practices, or make full restitution to Plaintiff and Class Members;

F. An award of attorneys' fees and costs pursuant to all applicable laws;

G. An award of pre-judgment and post-judgment interest, as provided by law;

H.  Leave to amend the Complaint to conform to the evidence produced at trial; and

I.  Such other relief as may be appropriate under the circumstances.

**DEMAND FOR JURY TRIAL**

Plaintiff, individually and on behalf of all others similarly situated, hereby demands a trial by jury as to all matters so triable.

Dated: March 1, 2018

_____
Robert Ahdoot, SBN 172098
*rahdoot@ahdootwolfson.com*
Tina Wolfson, SBN 174806
*twolfson@ahdootwolfson.com*
Theodore W. Maya, SBN 223242
*tmaya@ahdootwolfson.com*
Bradley K. King, SBN 274399
*bking@ahdootwolfson.com*
AHDOOT & WOLFSON, PC
10728 Lindbrook Drive
Los Angeles, California 90024
Telephone: (310) 474-9111
Facsimile: (310) 474-8585

*Counsel for Plaintiff Sara Hawes*

# DECLARATION OF ROBERT AHDOOT

I, Robert Ahdoot, declare as follows:

1. I am an attorney with the law firm of Ahdoot & Wolfson, PC, counsel for Plaintiff in the above-captioned action. I am admitted to practice law in California and before this Court and am a member in good standing of the State Bar of California. This declaration is made pursuant to California Civil Code section 1780(d). I make this declaration based on my research of public records and upon personal knowledge and, if called upon to do so, could and would testify competently thereto.

2. Venue is proper in this Court because Plaintiff suffered injuries as a result of Apple's acts in this District, including Apple's decision to engage in its iPhone throttling practices in this District. Apple regularly operates retail locations in this District and is registered to do business in California.

3. Plaintiff Sara Hawes is a resident of West Hollywood, California, in Los Angeles County.

4. Defendant Apple Inc. is a California corporation registered to do business in California with its principal place of business located at One Apple Park Way, Cupertino, California 95014.

I declare under penalty of perjury under the laws of the United States and the State of California this 1st day of March, 2018 in Los Angeles, California that the foregoing is true and correct.

_____
Robert Ahdoot